1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CASE NO. 2:14-CV-01488-MJP |

11

Plaintiff,

ORDER DENYING DEFENDANT'S
RENEWED MOTION TO DISMISS

12

v.

13

BNSF RAILWAY CO.,

14

Defendant.

15

16

THIS MATTER comes before the Court on Defendant BNSF Railway Co.'s Renewed

17

Motion to Dismiss Plaintiff Equal Employment Opportunity Commission's claim under the

18

Americans with Disabilities Act filed on behalf of Russell Holt.  Having considered the motion

19

(Dkt. No. 21), the response (Dkt. No. 23), the reply (Dkt. No. 24), and all attached documents,

20

the Court DENIES Defendant's Renewed Motion to Dismiss.

21

**Background**

22

BNSF Railway Co. ("BNSF") offered Russell Holt ("Holt") a position as a patrol officer,

23

contingent upon Holt passing a post-offer, pre-employment medical examination.  (Dkt. No. 23

24

1   at 5.)  The Equal Employment Opportunity Commission ("EEOC") alleges that BNSF

2   discriminated against Holt when, after BNSF's contract doctor cleared Holt for the position

3   based on a routine medical examination required of all applicants, it demanded that Holt procure

4   a follow-up MRI.  (Id. at 5.)  Because the MRI was deemed not medically necessary by Holt's

5   doctor, Holt's medical insurance would not cover it; Holt would have to pay for the MRI

6   himself.  (Id. at 5.)  When Holt refused to procure the MRI because of the cost, BNSF refused to

7   waive the requirement, and rescinded the offer of employment. (Id. at 5.)

8         EEOC contends the MRI was an improper additional inquiry not required of all entering

9   employees, and discriminated on the basis of disability in a manner that was not job-related and

10   not consistent with business necessity, violating sections 42 U.S.C. § 12112(d)(3)(A) and (C) of

11   the Americans with Disabilities Act ("ADA").  (Dkt. Nos. 11, 23.)  Defendant argues that the

12   ADA allows BNSF to require the MRI because it was a follow-up examination that is medically

13   related to the initial examination.  Defendant now moves to dismiss Plaintiff's ADA claim.

14                   **Analysis**

15   **I.**     **Legal Standards**

16        **A.**     **Motion to Dismiss**

17         To survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must state a claim for relief that

18   is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is facially

19   plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

20   inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility does not mean

21   probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully."

22   Id.  Merely reciting the elements of a cause of action will not suffice.  Bell Atl. Corp. v.

23   Twombly, 550 U.S. 544, 555 (2007).

24

1    Courts follow a two-pronged approach when deciding whether a complaint survives a

2   Fed. R. Civ. P. 12(b)(6) motion.  Iqbal, 556 U.S. at 678-79.  First, "a court must accept as true all

3   of the allegations contained in a complaint" unless the allegations are legal conclusions.  Id.

4   Second, the claim for relief must be plausible, which is a context-specific task.  Id.  Courts can

5   consider "documents attached to the complaint, documents incorporated by reference in the

6   complaint, or matters of judicial notice" when making their determination.  U.S. v. Ritchie, 342

7   F.3d 903, 908 (9th Cir. 2003).

8               **B.    Discrimination in the Hiring Process Under the ADA**

9    No covered employer shall discriminate against a qualified individual on the basis of

10   disability in the hiring process.  42 U.S.C. § 12112(a).  After an offer of employment but before

11   the start of work, the employer may require a medical examination and may condition the offer

12   of employment on the results of such examination.  42 U.S.C. § 12112(d)(3).  These

13   examinations are not required to be job-related and consistent with business necessity, 29 C.F.R.

14   § 1630.14(b)(3), but if the results of the examination screen out or tend to screen out individuals

15   with disabilities, the screening criteria must be job-related and consistent with business necessity.

16   42 U.S.C § 12112(b)(6).

17    The examination is subject to three restrictions: all entering employees must receive an

18   examination regardless of disability, information obtained from the examination must be kept

19   sufficiently confidential, and the results of the examination must only be used "in accordance

20   with this subchapter," i.e., they must not be used to impermissibly discriminate against a

21   candidate with disabilities.  42 U.S.C. § 12112(d)(3)(A)-(C).

22

23

24

ORDER DENYING DEFENDANT'S RENEWED
MOTION TO DISMISS- 3

1    EEOC guidance provides that, after the examination, an employer may request more

2 medical information from an entering employee if the follow-up examinations or questions are

3 "medically related to the previously obtained medical information."  EEOC, EEOC Notice

4 No. 915.002, Enforcement Guidance: Preemployment Disability-Related Questions and Medical

5 Examinations (1995); see also, McDonald v. Webasto Roof Sys., Inc., 570 F. App'x 474, 476

6 (6th Cir. 2014); Flores v. Am. Airlines, Inc., 184 F. Supp. 2d 1287, 1294 (S.D. Fla. 2002). An

7 employer may choose to ask only some individuals for follow-up examinations before clearing

8 them for work; they need not ask all applicants. See McDonald, 570 F. App'x at 476.

9    **II.    Claim against BNSF under the ADA**

10    EEOC argues that BNSF impermissibly discriminated against a qualified individual on

11 the basis of disability by requiring Holt to secure an MRI at his own expense after being cleared

12 by a company doctor.  While all applicants were given medical examinations, not all applicants

13 were required to secure expensive additional examinations at their own expense.  (Dkt. No. 23 at

14 6.)  EEOC argues that just because follow-up examinations, such as the MRI here, are

15 permissible if medically related to initial examinations given to all applicants, it does not

16 necessarily follow that covered employers can require applicants to bear the costs of those

17 follow-up procedures.  (Dkt. No. 23 at 12.)  EEOC argues the MRI requirement, because of its

18 cost, functioned as a screening criterion which screened out Holt, and that screening out Holt in

19 this manner was impermissible because the criterion is not job-related or consistent with business

20 necessity.  The criterion also tends to screen out people with disabilities by requiring them to

21 secure expensive additional examinations that applicants without disabilities are not required to

22 secure.  (Dkt. No. 23 at 12.)

23

24

1    BNSF argues that examinations seeking additional information based on the results of the

2    first examination, such as the MRI required here, are considered part of post-offer, pre-

3    employment medical examinations and are permitted by EEOC guidance as long as they are

4    medically related.  (Dkt. No. 24 at 4-5.)  Defendant contends that post-offer, pre-employment

5    examinations are not required to be identical for all applicants under either the ADA or EEOC

6    guidance.  (Dkt. No. 21 at 8-9.)  Defendant further argues that because Holt did not procure the

7    MRI, BNSF did not use the MRI or its results to disqualify him from the position; rather, BNSF

8    used Holt's failure to submit a complete application to disqualify him.  (Dkt. No. 21 at 8.)

9    The Court is not persuaded by Defendant's contentions.  The statute does not authorize

10   an employer to require that an entering employee pay for the follow-up examination where only

11   applicants with disabilities are asked to provide the follow-ups, especially where a company

12   doctor has already cleared that employee as fit for the position.  Defendant is correct that a post-

13   offer, pre-employment examination need not be job-related and consistent with business

14   necessity, and that medically-related follow-up examinations of some entering employees are

15   permitted.  But BNSF's requirement that Holt procure a follow-up MRI after the post-offer, pre-

16   employment examination functioned as a screening criterion that screened out an applicant with

17   a disability by imposing an expensive additional requirement not imposed on other applicants.

18   The ADA requires screening criteria that screen out people with disabilities to be job-related and

19   consistent with business necessity; here, EEOC argues the MRI requirement was not job-related

20   and consistent with business necessity.  A company doctor had already cleared Holt for work,

21   and at the time of his application, Holt had been performing patrolman duties as a police officer

22   for eleven years without any accommodation.

23

24

ORDER DENYING DEFENDANT'S RENEWED
MOTION TO DISMISS- 5

1    As BNSF points out, the ADA does not discuss the cost or payment of ADA-permitted

2  medical examinations.  BNSF cites to several cases in support of its interpretation of the statute,

3  but in none of the cases relied on did the employer require the applicant to pay for a follow-up

4  examination or require a follow-up after its contract doctor had already cleared the applicant for

5  work.  EEOC has stated a plausible claim upon which relief can be granted.

6                                                    **<u>Conclusion</u>**

7    The Court finds that Plaintiff has stated a claim under the Americans with Disabilities

8  Act.   Defendant's Renewed Motion to Dismiss is DENIED.

9

10    The clerk is ordered to provide copies of this order to all counsel.

11    Dated January 29, 2015.

12

13

14    _____
      Marsha J. Pechman

15    Chief United States District Judge

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANT'S RENEWED
MOTION TO DISMISS- 6